UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANACOSTIA RIVERKEEPER, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. 11-1453 (RMC) |
| WASHINGTON GAS LIGHT COMPANY, | ) ) ) ) ) | |
| Defendant. | ) ) | |

**OPINION**

        Plaintiffs Anacostia Riverkeeper and Anacostia Watershed Society bring a citizen suit under the Resource Conservation and Recovery Act to abate the endangerment to the environment caused by the Washington Gas Light Company's former gas manufacturing plant at a site adjacent to the Anacostia River in Southeast, Washington, D.C. Because the United States has already selected and is implementing removal and remedial actions at the same site under the Comprehensive Environmental Response, Compensation, and Liability Act, Plaintiffs' Complaint is barred by CERCLA's "timing of review" provision. Washington Gas' motion to dismiss will be granted, and the Complaint will be dismissed for lack of subject matter jurisdiction.

**I. FACTS**

        The Complaint addresses recognized contamination to land and sediments in and around the Anacostia River and alleges the following facts. The Anacostia River is approximately 8.5 miles long and flows through the District of Columbia before it enters the

Potomac River.  The Anacostia Watershed is home to approximately 800,000 urban residents.  The East Station Site, where Washington Gas manufactured gas for nearly a century, consists of 18.8 acres of land located in the lower area of the watershed.  Washington Gas owns approximately 11.4 acres of the East Station Site.  Prior to 2008, the United States owned roughly 4.5 of the remaining acres, of which all but .35 acres were managed by the National Park Service ("NPS").  This area, except for the .35 acres, is referred to by the parties and this Court as the "NPS Site."  In 2008, ownership of the NPS Site was transferred to the District of Columbia.  The .35- acre portion of the property is held by the United States and managed  by the U.S. Army Corps of Engineers; the Army Corps uses this small section as a station for debris collection boats that patrol the Anacostia and Potomac Rivers.

Washington Gas owned and operated a gas manufacturing plant on the East Station Site.  The plant was closed in 1983 and demolished by 1988.  As a result of the gas manufacturing and disposal practices at the Site, Washington Gas had contaminated the Site's "surface soil, subsurface soil, groundwater, and the water and sediment in the Anacostia River."  Compl. [Dkt. 1] ¶ 53.  In 1999, the Environmental Protection Agency ("EPA") issued a Record of Decision (the "EPA ROD") for the East Station Site under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601, *et seq*. ("CERCLA").  The EPA ROD noted that the East Station Site "was the subject of six major environmental investigations" which "characterized the land and river contamination, assessed the human-health and ecological risks, and evaluated the remedial alternatives."  *Id*. ¶¶ 61-62.  The EPA ROD determined that "several human exposure scenarios . . . exceeded threshold risk levels, requiring elimination or management of the contamination."  *Id*. ¶ 64.  The EPA ROD found danger in the risk of exposure to surface soil at the NPS Site, subsurface soil across the East

Station Site, and contamination of the Anacostia River and its sediment due to chemicals found at the NPS Site. The EPA ROD concluded that if the release of hazardous substances into the environment were not addressed by implementing the remedies selected in the EPA ROD, it could pose a threat to public health or the environment. *Id.* ¶ 68. The EPA ROD "set out a selected remedy for the entire East Station Site but indicated that a separate record of decision would be issued for the NPS Site." *Id.* ¶ 71.

NPS issued a ROD for the NPS Site in August 2006 (the "NPS ROD") that selected a response action for that site, but, according to the Complaint, deferred identifying any response action for the contaminated sediment in the Anacostia River. *See* Mot. to Dismiss, Ex. A [Dkt. 8-2] (NPS ROD). It is the NPS Site and this contaminated river sediment that are at the heart of Plaintiffs' complaint.

The parties agree on the following facts. The NPS ROD contained four response actions for the NPS Site: a groundwater remedy, a DNAPL[1] remedy, a surface soil remedy, and a subsurface soil remedy. The groundwater and DNAPL remedies, which included pumping and treating the groundwater at the Site and capture of DNAPL in all groundwater extraction wells, were the same as those selected in the EPA ROD. Washington Gas is continuing to implement these remedies across the entire East Station Site. The NPS ROD also required two additional soil remedies: (a) removal of contaminated surface soil to the a depth of one foot; and (b) removal of subsurface soil contaminated with tar down to clean fill or to a maximum depth of three feet. NPS ROD at 2. Finally, the NPS ROD required "participation by Washington Gas in a watershed-wide study of sediment quality." *Id.* It stated that this study would be led by EPA and required that it be partially funded by Washington Gas. The "study is intended to lead to

---

[1] DNAPL is tar or "Dense Nonaqueous Phase Liquid."

recommendations for a comprehensive and coordinated remedial plan for the watershed in which Washington Gas will participate." *Id*. The NPS ROD also stated that the "NPS will evaluate actions to reduce any sediment contamination . . . . This may lead to the implementation of remedial action to mitigate existing contamination in river sediments." *Id*. at 62.

The parties dispute whether the NPS ROD selected a response action for contaminated sediment in the Anacostia River. Defendant asserts that the sediment remedy consists of "further study of the sediments and participation in a regional study." Reply [Dkt. 11] at 11. While Plaintiffs concede that such studies do count as response actions under CERCLA, they argue that any sediment study at the NPS Site has already been completed or should be deemed completed because of the passage of time.

CERCLA authorizes NPS to implement the NPS ROD either by issuing a unilateral administrative order or by entering into a consent decree with Washington Gas. 42 U.S.C. §§ 9606(a), 9622(d). To date, no such order or consent decree has been entered.

Before this Court is a related case titled *United States v. Washington Gas Light Company*, No. 11-2199 (RMC), filed on December 12, 2011, in which the United States proposes a consent decree that would cover the entire East Station Site: the two terrestrial parcels, the groundwater under both parcels, and the sediments and water of the Anacostia River where hazardous substances from the Washington Gas Property are located. One terrestrial parcel is the approximately 11.4 acres owned by Washington Gas; the second terrestrial parcel is the 4.2-acre plot now owned by the District (except for the .35-acre area retained by the United States). The United States lodged its proposed consent decree on December 13, 2011. *Washington Gas Light Co.*, No. 11-2199, Notice of Proposed Consent Decree [Dkt. 3]. After

4

required publication, receipt of comments, and consideration of comments,[2] the United States filed its unopposed motion for entry of final judgment consent decree on August 29, 2012. *See id.*, Mot. for Entry of Final J. [Dkt. 11]. The Plaintiffs in this case filed a motion to intervene in Case No. 11-2199, but withdrew their motion on September 18, 2012. Unlike this suit, which is limited to the NPS Site, the proposed final consent decree covers the entire area. It provides for implementing the soil and subsoil remedies and a Remedial Investigation/Feasibility Study ("RI/FS") for "groundwater, surface water, and the sediments of the Anacostia River." *Id*.

Due to the delay in actual implementation of response actions at the NPS Site,[3] Plaintiffs ask the Court to enter judgment declaring that Washington Gas "has contributed and/or is contributing to the past and/or present handling, storage, treatment, transportation, and/or disposal of solid or hazardous waste containing coal tar and other contaminants that presents or may present an imminent and substantial endangerment to human health or the environment, in violation of . . . § 7002(a)(1)(B)" of the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et. seq.*, (RCRA) and order Washington Gas to take all measures to eliminate the endangerment. Compl. at 15 (Relief Requested). Section 7002(a)(1)(B) of RCRA allows suit against "any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). These actions are known as endangerment suits.

---

[2] The notice and comment period yielded two sets of comments, one from the Plaintiffs in this case and one from the Historic Anacostia Boating Association.

[3] The United States explains that the delay in filing the Final Consent Decree was caused by the unusually complex nature of the negotiations because of the number of agencies (federal and state) and because the soil remedy and the RI/FS required by the consent decree involve complicated technical issues.

Washington Gas moves to dismiss the Complaint, arguing that the Court lacks subject matter jurisdiction over Plaintiffs' claims because the United States already is engaged in a CERCLA response action at the NPS Site and therefore CERCLA's "timing of review" provision bars Plaintiffs' Complaint.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint, or any portion thereof, for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court must review the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F. 3d 1196, 1199 (D.C. Cir. 2004). Nevertheless, "the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).

To determine whether it has jurisdiction over the claim, a court may consider materials outside the pleadings. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005). No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is an Article III and a statutory requirement. *Akinseye v. Dist. of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003). The party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008); *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (noting that federal courts are courts of limited jurisdiction and "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (internal citations omitted).

### III. ANALYSIS

Section 104(a) of CERCLA authorizes the President, and, by delegation, specific federal agencies including the Department of the Interior (of which NPS is a part), to undertake removal and remedial actions when a hazardous substance is released into the environment. 42 U.S.C. § 9604(a)[4]. CERCLA defines such response actions as:

> The terms "remove" or "removal" means the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release . . . .
>
> The terms "remedy" or "remedial action" means those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances . . . .

42 U.S.C. § 9601(23) - (24). The relevant agency may choose to order or negotiate with the party to implement the selected response actions. *See* 42 U.S.C. §§ 9606(a), 9622(d).

---

[4] The statute reads:

> Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare, the President is authorized to act . . . to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment.

42 U.S.C. § 9604(a).

CERCLA itself shields pending CERCLA response actions from lawsuits that might otherwise interfere with an "expeditious cleanup effort." *New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1249 (10th Cir. 2006). It accomplishes this through its timing of judicial review provision, § 113(h). *See* 42 U.S.C. § 9613(h). Section 113(h) states: "No Federal court shall have jurisdiction under Federal law . . . to review any challenges to removal or remedial action selected under section [104 of CERCLA], in any action except one of the following [exceptions]." *Id*. § 9613(h). "A suit challenges a remedial action within the meaning of [§]113(h) if it interferes with the implementation of a CERCLA remedy." *Broward Gardens Tenants Ass'n v. EPA,* 311 F.3d 1066, 1072 (11th Cir. 2002).

### A.  Application of § 113(h) to RCRA Suits

Plaintiffs argue that § 113(h) does not apply to this RCRA endangerment action and that the Court should find that Congress barred only additional CERCLA enforcement actions in § 113(h). They base their argument on the statute's list of exceptions to the § 113(h) bar, which allows certain suits under CERCLA to go forward despite response actions, but does not address suits under other statutes. Section 113(h) lays out five exceptions to its jurisdictional bar:  (1) actions to recover costs and damages or for contribution under CERCLA; (2) actions to enforce orders issued under CERCLA; (3) actions for reimbursement of compliance costs in connection with a CERCLA action; (4) citizen suits alleging that a removal or remedial action violated CERCLA; and (5) actions by the United States to compel a CERCLA remedial action. 42 U.S.C. § 9613(h)(1) - (5).

Plaintiffs' argument is logically strained:  exceptions to the jurisdictional bar that *advance* CERCLA enforcement can hardly be said to authorize lawsuits under other statutes. In addition, the plain language of § 113(h) runs counter to the argument. Congress very clearly

stated that no action in federal court may proceed to challenge CERCLA enforcement. *Id*. § 9613(h). Thus § 113(h) "effectuates a 'blunt withdrawal of federal jurisdiction.'" *Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Richardson*, 214 F.3d 1379, 1382 (D.C. Cir. 2000) (quoting *N. Shore Gas Co. v. EPA*, 930 F.2d 1239, 1244 (7th Cir. 1991)). "[T]he unqualified language of the section precludes any challenges to CERCLA Section 104 clean-ups, not just those brought under other provisions of CERCLA." *McClellan Ecological Seepage Situation v. Perry,* 47 F.3d 325, 328 (9th Cir. 1995) (internal quotation marks and citation omitted); *see also Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1020 (3d Cir. 1991) ("Congress could hardly have chosen clearer language to express its intent generally to deprive the district court of jurisdiction over claims based on other statutes when the EPA undertakes the clean-up of toxic wastes . . . .").[5]

    For example, the D.C. Circuit has found that a suit for violation of the National Environmental Policy Act, 42 U.S.C. § 4321 *et. seq.*, was barred when the Department of Energy had already begun a CERCLA removal action. *Oil, Chem. & Atomic Workers*, 214 F.3d at 1382-83. Other circuits have likewise found RCRA enforcement actions barred by § 113(h). *McClellan,* 47 F.3d at 329 ("Although judicial review is an important element in the enforcement of laws such as RCRA and the Clean Water Act, Congress has determined that the need for swift execution of CERCLA cleanup plans outweighs this concern"); *Clinton Cnty. Comm'rs v. EPA,*

---

[5] Plaintiffs emphasize that § 113(h)(4) allows CERCLA citizen suits only after a remedial or removal action is complete. *See Schalk v. Reilly*, 900 F.2d 1091, 1095 (7th Cir. 1990). They argue that this means the litigation bar in § 113(h) applies only to CERCLA. "However, the method of section 113(h) is not to toll judicial remedies, and leave it at that; it is to specify the remedies that survive." *N. Shore Gas,* 930 F.2d at 1245. Thus, by specifying timing for CERCLA citizen suits to *after* government remediation, Congress was not limiting the scope of the § 113(h) jurisdictional bar. *See New Mexico*, 467 F.3d at 1249 ("[T]he obvious meaning of [§ 113(h)] is that when a remedy has been selected, no challenge to the cleanup may occur prior to completion of the remedy."). Most actions "challenging" a CERCLA response will be moot at the point the cleanup process is completed. *N. Shore Gas*, 930 F.2d at 1245.

116 F.3d 1018, 1027 (3d Cir. 1997) (holding that § 113(h) precludes jurisdiction "over *any* challenge to a CERCLA action based on a violation of *any* other federal law."); *Ark. Peace Cntr. v. Ark. Dep't of Pollution Control & Ecology*, 999 F.2d 1212, 1217-18 (8th Cir.1993) (holding that plain wording of § 113(h) requires that a suit under RCRA is barred if it challenges a CERCLA response action); *OSI, Inc. v. United States*, 525 F.3d 1294, 1297-98 (11th Cir. 2008) (If a "remedial action was selected under [§ 104], then the district court lacked jurisdiction over the RCRA citizen suit until the cleanup action was complete."); *N. Shore Gas*, 930 F.2d at 1244 (finding a suit under RCRA barred by § 113(h)). [6]

Despite this precedent, Plaintiffs argue that applying § 113(h) here would "repeal by implication" RCRA's own claim preclusions. RCRA itself bars citizen endangerment suits when the federal government (1) has commenced and is prosecuting a RCRA enforcement action under § 7002, 42 U.S.C. § 6973, or a CERCLA abatement action under § 106 of CERCLA, 42 U.S.C. § 9606; (2) "is actually engaging in a removal action under [CERCLA]"; (3) "has incurred costs to initiate a Remedial Investigation and Feasibility Study . . . and is diligently proceeding with a remedial action under [CERCLA]"; or (4) "has obtained a court order (including a consent decree) or issued an administrative order" under § 106 of CERCLA. 42 U.S.C. § 6972(b)(2)(B)(i) - (iv). Plaintiffs assert that "where a federal agency has undertaken and completed some initial study or other removal action but not actually moved forward with a final remedial plan, RCRA allows [a citizen] suit, but CERCLA does not." Pls.' Opp'n [Dkt. 9] at 14. According to Plaintiffs, RCRA allows citizen suits before the federal government has begun to implement a CERCLA remediation plan "diligently." *Id.* Since RCRA itself would

---

[6] *But see United States v. Colorado*, 990 F.2d 1565 (10th Cir. 1993), in which the Tenth Circuit allowed a RCRA enforcement action brought by a State under § 7002(a)(1)(B), relying in part on the section of CERCLA that states, "[n]othing in [CERCLA] shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within [the] State." 990 F.2d at 1575 (citing 42 U.S.C. 9614(a)).

10

allow their suit – the federal government having not been diligent – Plaintiffs argue that applying § 113(h) to bar their suit would repeal RCRA's preclusion provisions by implication.

Plaintiffs rely on legal maxims to support their argument. "It is a cardinal principle of construction that repeals by implication are not favored. When there are two acts upon the same subject, the rule is to give effect to both if possible." *United States v. Borden Co.*, 308 U.S. 188, 198 (1939). "In the absence of some affirmative [congressional] showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Morton v. Mancari*, 417 U.S. 535, 550 (1974). Repeals by implication are "never [permitted] . . . when the former act can stand together with the new act." *Ex parte Yerger*, 75 U.S. 85, 105 (1868).

Contrary to Plaintiff's fundamental argument, the preclusion provisions of RCRA and CERCLA are not irreconcilable. Both statutes preclude RCRA suits under specified conditions, but CERCLA § 113(h) is broader and bars suits under multiple statutes. RCRA's terms clearly apply when two or more RCRA endangerment actions are at issue. CERCLA "trumps" RCRA and other statutes when CERCLA remediation is under question or attack. This Court can easily recognize separate effects from each statute.[7]

Plaintiffs also cite the principle that a more general statute should not overcome specific statute. This principle does not pertain here. These two statutes may overlap in certain respects but may also readily co-exist. "[W]hen two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976) (quoting *Morton*, 417 U.S. at 551) (ellipses in original). Section 113(h) and

---

[7] For this reason, Plaintiffs' argument that the coexistence of CERCLA and RCRA's preclusion provisions makes RCRA meaningless also has no traction. "[R]edundancies across statutes are not unusual events in drafting, and so long as there is no positive repugnancy between the two laws . . . a court must give effect to both." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) (internal citation and quotation marks omitted).

RCRA's preclusion provisions do not cover all of the same circumstances; even so, they reach the same result where they overlap. The statutes do not conflict and the Court may find both effective.

Finally, Plaintiffs argue that CERCLA § 302(d), 42 U.S.C. § 9652(d), shows that RCRA citizen suits are not barred by § 113(h). Section 302(d) states that nothing in CERCLA "shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants." 42 U.S.C. § 9652(d). Plaintiffs overlook the more applicable CERCLA savings clause, at § 310(h), which states:

> [CERCLA] does not affect or otherwise impair the rights of any person under Federal, State, or common law, *except with respect to the timing of review as provided in section [113](h)* . . . .

42 U.S.C. § 9659(h) (emphasis added). In this comparison, the specific does overcome the general and § 310(h) makes the primacy of CERCLA § 113(h) explicit.

### B. CERCLA Response Action

Plaintiffs seek to avoid CERCLA on the basis that there is no ongoing CERCLA response action at the NPS Site. In advancing this argument, Plaintiffs argue that the response actions selected for the other four aspects of the overall site should be deemed constructively complete and therefore § 113(h) should not apply to their suit. They further dispute whether the NPS ROD actually selected a response action under CERCLA for contaminated sediments in the Anacostia River.

With respect to the groundwater and DNAPL remedies, Plaintiffs argue that "[b]ecause both systems will be left in place indefinitely, completeness is measured not by whether they continue to operate but by whether they were installed and brought online." Pls.'

Opp'n at 24. Plaintiffs agree that both of these remedies are "'underway' in a literal sense." *Id*. Nonetheless they argue that the Court should treat these actions as now complete because neither has a discernible termination date (which would allow a RCRA suit thereafter). *Id*.

Likewise, Plaintiffs urge the Court to deem all soil remedies at the NPS Site "constructively complete" because NPS has selected but failed to implement a remedial plan, despite the passage of several years. *Id*. at 29. This approach is necessitated, according to Plaintiffs' argument, or § 113(h) would become an absolute bar to judicial review. Plaintiffs insist that the "neglect" shown by the United States to the NPS Site should lift the insulation that CERCLA actions enjoy from review. *Id*. at 30.

In essence, Plaintiffs argue that § 113(h)'s withdrawal of federal court jurisdiction may not indefinitely bar judicial review. Faced with a remedy of lengthy but uncertain duration, which they consider wholly inadequate, Plaintiffs advance a theory of "constructive completion" to void CERCLA's litigation bar. The Court cannot accept the theory on this record. It is true that the application of § 113(h) "may in some cases delay judicial review for years, if not permanently . . . . Whatever its likelihood, such a possibility is for legislators, and not judges, to address." *McClellan*, 47 F.3d at 329; *see also Schalk,* 900 F.2d at 1095 ("The obvious meaning of [§ 113(h)] is that when a remedy has been selected, no challenge to the cleanup may occur prior to completion of the remedy."). While there may be cases where government inaction may cause a court to look more closely at whether a CERCLA response action has been selected or is being pursued diligently, this is not that case. *Cf. Frey v. EPA*, 403 F.3d 828, 835 (7th Cir. 2005) (addressing a situation where CERCLA environmental studies had been ongoing for years but no remedial action had been selected). Whatever might be said about the years it took for

the United States to take CERCLA actions vis-à-vis the NPS Site, there can be no doubt that it is moving ahead diligently now.

Plaintiffs focus particularly on an alleged gap in remedial actions to address contaminated sediments in the Anacostia River. They characterize the "intent for future action" described in the NPS ROD as lacking sufficient specificity to constitute remedial or removal action under CERCLA and thus insufficient to foreclose judicial review. But, as Plaintiffs reluctantly recognize, CERCLA includes "such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances" within the meaning of "remove" or "removal." 42 U.S.C. § 9601(23). The NPS ROD calls for exactly this type of action. *See Razore v. Tulalip Tribes of Washington*, 66 F.3d 236, 239 (9th Cir. 1995) (holding that a RI/FS whose objective was to make an informed choice amongst possible cleanup alternatives satisfied the definition of a removal action under CERCLA); *Broward Gardens*, 311 F.3d at 1071 (stating CERCLA removal actions "include actions to study and clean up contamination"); *Jach v. Am. Univ.*, 245 F. Supp. 2d 110, 113 (D.D.C. 2003) (CERCLA cleanup process is divided into short term "removal" actions (actions to study and clean up contamination) and permanent or long term "remedial" actions (actions taken instead of or in addition to removal)). The consent decree proposed in Case No. 11-2199 includes specifics on such an investigation and study.

*Frey v. EPA*, 403 F.3d 828, in which the Seventh Circuit rejected EPA's plan to study river sediment and water contamination as a CERCLA "removal action" sufficient to trigger § 113(h), is not convincing. In that case, EPA had completed excavation of contaminated soil but continued water and sediment investigations, without more, for at least another five years. The Seventh Circuit became impatient and decided that EPA could not "preclude review

14

by simply pointing to ongoing testing and investigation, with no clear end in sight." 403 F.3d at 835. This Court is not persuaded to follow *Frey,* especially when the proposed consent decree is so close to fruition. Plaintiffs do not dispute that active remediation efforts have been on-going by Washington Gas for years. They concentrate their concerns on the alleged neglect of the sediment in the Anacostia River. The proposed consent decree addressed the sediment which is, in truth, but a part of the overall recovery effort.

Lastly, Plaintiffs argue that the transfer of the NPS Site to the District of Columbia, through which the District of Columbia and NPS agreed to reassess the appropriateness of the NPS ROD, renders all remedies selected in the NPS ROD so transient that they should be deemed "constructively complete." Whatever the value of Plaintiffs' constructive completion theory in other situations, it fails here. Were it applicable, it was at a time before the proposed final consent decree containing specific selected remedies came before the Court for review and approval.

### C. The River Site

Plaintiffs allege that the Anacostia River itself is adjacent to the NPS Site and that no CERCLA response actions are selected or ongoing for that site. This is wrong as a matter of fact, as a review of the proposed final consent decree makes immediately obvious. The Site that is covered by the proposed consent decree includes property adjacent to, under, and in the Anacostia River, and the river's sediments are an identified focus of the study and further selection of remediation methods.

### D. Non-Challenge to CERCLA Response Action

As a final argument, Plaintiffs contend that this law suit is not a challenge to any CERCLA response actions within the meaning of § 113(h). The question is whether Plaintiffs'

complaint would "interfere[] with the implementation of a CERCLA [response]," *Broward Gardens*, 311 F.3d at 1072, or is related to the goals of the cleanup. *Razore*, 66 F.3d at 239. "To determine whether a suit interferes with, and thus challenges, a cleanup, courts look to see if the relief requested will impact the . . . action selected." *Broward Gardens*, 311 F.3d at 1072. "[L]itigation which interferes with even the most tangential aspects of a cleanup action is prohibited." *Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Pena*, 62 F. Supp. 2d 1, 10 (D.D.C. 1999), *aff'd sub nom. Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Richardson*, 214 F.3d 1379.

Plaintiffs claim that "granting [their requested] relief would not require the Court to interfere with the selected remedial plan in any way — either by adding, changing, or removing actions, by disrupting ongoing selection processes, or by altering the timeline" because it "would require only that the Court implement the NPS ROD." Pls.' Opp'n at 34. Plaintiffs mischaracterize their own complaint, which asks the Court to order "Washington Gas to take all such actions as may be necessary to eliminate any endangerment" from hazardous contamination at the site. Compl. at 15 (Relief Requested). Such a remedy fashioned and ordered by the Court would most certainly interfere with the implementation of the proposed CERCLA remedies. *Broward Gardens*, 311 F.3d at 1073 ("Because the complaint seeks to have the court modify or replace the remedial plan . . . , it clearly is a challenge to the selected remedial plan.").

Even if Plaintiffs' characterization of the complaint were to be credited, the relief they seek would still constitute a "challenge" to a CERCLA response action. "[C]hallenges to the procedure employed in selecting a remedy nevertheless impact the implementation of the remedy and result in the same delays Congress sought to avoid by passage of [CERCLA] . . . . The judicial review itself slows the process down." *Schalk*, 900 F.2d at 1097 (dismissing suit by

which plaintiff sought a court order requiring EPA to conduct studies and conduct public hearings); *see also Boarhead*, 923 F.2d at 1019 ("Congress enacted CERCLA so that the [executive] would have the authority and the funds necessary to respond expeditiously to serious hazards without being stopped in its tracks by legal entanglement before or during the hazard clean-up."). Plaintiffs fail to distinguish their suit from those barred by CERCLA.

## IV. CONCLUSION

Because the Complaint is barred by § 113(h) of CERCLA, Washington Gas' motion to dismiss [Dkt. 8] will be granted, and the case will be dismissed. A memorializing Order accompanies this Opinion.

Date: September 24, 2012                       /s/
                                               ROSEMARY M. COLLYER
                                               United States District Judge